CARTER et al. v. SCHOOL BOARD OF ARLINGTON COUNTY, VIRGINIA et al.

No. 6064.

United States Court of Appeals Fourth Circuit.

Argued April 18, 1950.

Decided May 31, 1950.

Spotswood W. Robinson, III, and Martin A. Martin, Richmond, Va., (Hill, Martin &

Robinson, Richmond, Va., and Leon A. Ransom, Washington, D. C., on the brief) for appellants.

Lawrence W. Douglas, Arlington, Va., (Bankhead T. Davies, Arlington, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case again brings to our attention the right of Negro students in state schools to the same or substantially equivalent privileges of education as white students. The difficulties inherent in the practice of segregation are again emphasized. The schools in question are high schools located in Arlington County, Virginia, where the Negroes of school age constitute only a small percentage of the school population, so that the expense involved in affording to the small minority in a separate school every course of study and every kind of equipment and recreational facility that are given the majority is proportionately very great. Washington-Lee High School for white students is predominantly a senior high school with a total of 2,377 students of which 1,881 are in the senior and 496 in the junior high school. Hoffman-Boston High School for Negro students is predominantly an elementary-junior high school with 48 senior high school pupils, 13 boys and 35 girls, and a total enrollment of 270. In 1946-1947 and in 1947-1948 high school students numbered 12 and 18 respectively of which only 3 were boys. The burden upon the county authorities became more onerous when in recent years the schools in the District of Columbia imposed a tuition fee upon students from Arlington County and discontinued the practice of admitting Negro high school students from the county free of charge. Negro students who desired to attend the Washington schools to obtain courses and facilities available to whites but not to Negroes in Arlington County applied to the Arlington County School Board to pay their tuition, and this was done during the 1946–1947 and 1947–1948 sessions. In 1948–49, however, payment of tuition was refused to all Negro students except those who had completed three years of work in the District of Columbia schools.

These circumstances led to the present suit which was instituted by Constance Carter, a Negro high school student, by her mother and next friend, on her own behalf and on behalf of 300 colored students in Arlington County similarly situated. Subsequently, two other high school students, Julius Brevard and Peggy Council, were permitted to intervene. It was alleged that each of the plaintiffs applied for and was refused certain courses and educational advantages afforded to white students at Washington-Lee but not given to colored students at Hoffman-Boston. The suit was resisted by the school authorities on the ground that the educational advantages offered at Hoffman-Boston are substantially equivalent to those given at Washington-Lee, and this view was taken by the District Judge in an opinion reported at D.C., 87 F.Supp. 745.

In our view, this position is untenable since the evidence indicates that in plant facilities and courses of education the white students of Washington-Lee enjoy advantages which are not offered to the students at the colored high school. The differences between the two schools are sufficiently illustrated by the following facts which support the conclusion that discrimination actually exists. The physical plant and equipment at Hoffman-Boston in important respects compares unfavorably with that at Washington-Lee. Each school has a shop annex but the white high school has seven separate shop rooms or areas with adequate equipment for the training of students in various skills. It has a general machine shop, an automobile mechanics shop, mechanical drawing room, machine shop, sheet metal shop, printing shop and wood shop. The cost of the shop building was $110,000 and the cost of its equipment $21,000. Hoffman-Boston has a single general shop in one room with a variety of equipment, but no machines or tools for instruction in automobile mechanics or printing and no machines for instruction in machine shop, sheet metal, or wood shop. The cost of the shop building, which also houses the Home Economics Depart-

ment, was $37,500, and the cost of the equipment was $2,000.

Washington-Lee has four science laboratories, that is, a physics laboratory, a chemistry laboratory and two biology laboratories with adequate furniture and equipment which cost $34,501. Hoffman-Boston has only one science room in which all the sciences given at the school are taught. The equipment is less substantial and varied than that at Washington-Lee and cost $1,934.

The library at Washington-Lee consists of a reading and lending room and a reference room. It contains 8,682 books and 90 subscriptions to periodicals. The books cost $12,000. The library at Hoffman-Boston consists of one room made by combining two rooms of class room size, and is not so well adapted for library purposes as the rooms at Washington-Lee. It contains 1,077 books which cost $1,921 and twenty-one subscriptions to magazines.

Washington-Lee has two rooms especially equipped for instruction in music. It has also an auditorium designed for band and orchestra instruction, with a stage, music stands, and storage room. Hoffman-Boston has no special auditorium or room for instruction in music. For this purpose it uses its main auditorium for choral and instrumental music and a small class room formerly occupied as the principal's office.

Washington-Lee has two large rooms especially equipped for instruction in typewriting, which is furnished with typewriters, special tables and chairs, mimeograph machine and a mimeoscope. Hoffman-Boston uses one small room which is equipped with some typewriters but no mimeograph machine or mimeoscope.

Washington-Lee has two gymnasiums, one for girls and one for boys. Each gymnasium is well equipped with a basket ball court, dressing rooms, locker rooms, shower rooms, &c. Each room can be used for a variety of games and athletic contests. Hoffman-Boston has no gymnasium. Its auditorium is convertible for use in calisthentics and some gymnasium equipment is furnished; but the room is not suitable for gymnasium purposes and structural columns interfere with games. It has no basket ball court, dressing rooms, lockers or shower facilities.

Washington-Lee has a large well arranged cafeteria in which lunches are served. Hoffman-Boston has no cafeteria or lunch room facilities but plans have been made for a cafeteria to open in September, 1950.

Washington-Lee has an infirmary equipped with six beds and first aid equipment. Hoffman-Boston has no infirmary clinic or first aid room but a nurse spends three afternoons a week there.

There are many subjects taught at Washington-Lee that are not given at Hoffman-Boston. The list of these subjects includes courses in speech, journalism, solid geometry, commercial arithmetic, bookkeeping, automobile mechanics, woodworking, printing, &c.

Washington-Lee is accredited by the well recognized regional accrediting agency, the Southern Association of Colleges and Secondary Schools, and by the Virginia State Department of Education. Hoffman-Boston was accredited by the latter for the first time in 1948-1949 on a probationary basis but has never been accredited by the former.

The white pupils at Washington-Lee enjoy various extra curricular activities, such as glee clubs, choruses, cadet corps, publication staffs, Hi-Y organizations, a debating club and various athletic teams, and are eligible for nomination to the National Honorary Scholastic Society and for the receipt of the Bausch and Lomb Honorary Science award. None of these activities and awards are available to the colored pupils at Hoffman-Boston. The failure to provide these opportunities cannot be defended on the ground that their absence is mainly attributable to the size or location of the school.

It is contended that many courses are not given at Hoffman-Boston because they have not been requested or desired by the students; and that to provide for such a demand, if it should arise, a survey is made in the spring of each year to ascertain what subjects the students will desire

for the following session. Interrogatories are issued to the students in attendance as to their desires for the next session and inquiries are made at public meetings of parents in Parents and Teachers Associations and similar organizations; and it is said that if any course is found needed, it is provided. This procedure, however, is not followed at Washington-Lee where all courses in the curriculum are available each year to every eligible pupil without previous demand or request. This difference in procedure cannot be sustained. It places a burden upon the colored student and deprives him of the opportunity of taking a course of instruction unless he has determined to take it months in advance, whereas the white student may apply at the opening of the session and obtain the desired instruction. The point was touched upon by the Supreme Court in the Oklahoma Law School case, Sipuel v. Board of Regents of University of Okl., 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247, and Fisher v. Hurst, 333 U.S. 147, 68 S.Ct. 389, 92 L. Ed. 604, in which the court held that the refusal of admission of a Negro student to the state law school could not be upheld on the ground that the student had failed in advance to demand the establishment of a separate law school and admission thereto.

■ In further defense of the failure to furnish certain courses to the students at Hoffman-Boston, it is pointed out that the School Authorities of Arlington County have adopted the policy of sending Negro vocational pupils to the Manassas Regional school which is situated twenty-five miles distant in Prince William County, Virginia. Only one Negro student has availed himself of this opportunity. It does not offer in our opinion an equivalent advantage for colored students desiring courses which are given to white students at Washington-Lee in Arlington County. We had occasion to consider a similar situation in Corbin v. County School Board of Pulaski County, 4 Cir., 177 F.2d 924, where the inconvenience and loss of time imposed by transportation to the regional school were pointed out.

■ The above recital of existing conditions at the two schools is not intended to cover the whole field of physical plant and instruction, but rather to demonstrate by illustration that discrimination in the treatment accorded the students of the two races undoubtedly prevails. We append in the footnote a recapitulation of advantages and disadvantages by the District Judge in his opinion which led him to the conclusion, balancing one against the other, that no discrimination exists.[1] It is establish-

---

1. The evidence shows that each school has some advantages over the other, and each school has disadvantages not suffered by the other, but a summary of them discloses that Hoffman-Boston and Washington-Lee give substantially the same treatment to each of their high school students.

Washington-Lee offers courses in auto mechanics and printing; Hoffman-Boston gives a course in bricklaying, Washington-Lee does not. The home economics instruction facilities at Hoffman-Boston far exceed the corresponding facilities at Washington-Lee.

Hoffman-Boston offers physical education to all of its high school students, but none is offered at Washington-Lee to the students of the 11th and 12th grades, some 900 in number.

Washington-Lee is so overcrowded that its corridors must be made into one-way traffic arteries; study hours there must be spent in the rear of rooms then being used for class instruction; Hoffman-Boston has no such overcrowding.

At Hoffman-Boston two teachers of physical education are provided for 375 children, while at Washington-Lee four must handle 1,100 children.

The library at Hoffman-Boston will accommodate all of its senior high school at one time, while at Washington-Lee only 6% or 7% of its students may be so accommodated. Thus the student at Washington-Lee has very limited library access, but the Hoffman-Boston student has easy and unrestricted enjoyment and benefit of the library.

Again, the sizes of the classes at Hoffman-Boston are far more favorable. As an average Hoffman-Boston has between 20 and 25 to a class; at Washington-Lee a great many of the classes contain more than 35.

As we have already explained, the location of Hoffman-Boston is by far the better, having no constant traffic hazards.

ed, however, that the right of the individual student to the privilege of public instruction equivalent to that given by the state to the individual student of another race, is a personal one and equivalency cannot be determined by weighing the respective advantages furnished to the two groups of which the individuals are members. In Corbin v. County School Board of Pulaski County, 4 Cir., 177 F.2d 924, 926, we said: " * * * the question cannot be decided by averaging the facilities provided for the two classes of pupils throughout the county and comparing one with the other, since the rights created by the Fourteenth Amendment are individual and personal and the prohibitions of the Amendment are observed only when the same or equivalent treatment is accorded to persons of different races similarly situated. Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201; Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441."

See also McCabe v. Atchison, T. & S. F. Ry. Co., 235 U.S. 151, 161–162, 35 S.Ct. 69, 71, 59 L.Ed. 169, a case of segregation in railroad transportation, where the court said: "This argument with respect to volume of traffic seems to us to be without merit. It makes the constitutional right depend upon the number of persons who may be discriminated against, whereas the essence of the constitutional right is that it is a personal one. Whether or not particular facilities shall be provided may doubtless be conditioned upon there being a reasonable demand therefor; but, if facilities are provided, substantial equality of treatment of persons traveling under like conditions cannot be refused. It is the individual who

is entitled to the equal protection of the laws, and if he is denied by a common carrier, acting in the matter under the authority of a state law, a facility or convenience in the course of his journey which, under substantially the same circumstances, is furnished to another traveler, he may properly complain that his constitutional privilege has been invaded."

See also State of Missouri ex rel. Gaines, v. Canada, 305 U.S. 337, 350, 59 S.Ct. 232, 83 L.Ed. 208.

The view was expressed by the trial court that the difference between the two high schools are not discriminations outlawed by the Fourteenth Amendment, but only such variations as might be expected to exist between any two schools, springing from differences of size, location or methods of instruction; and that the state need not furnish the same or similar treatment to its citizens, but may vary the form of its benefits provided all citizens receive shares of equal value. Again it was said that differences may exist between the provisions made for white and for colored citizens without fouling the amendment, if the differences result only from unattentive stewardship or faulty judgment, and that such shortcomings are defects of administration to be corrected by the responsible authorities and are not constitutional defects for judicial interference.

■ These holdings may not be taken as safe guides by the school authorities or student population of Virginia. The differences between the two schools are not merely unimportant variations incident to the maintenance of separate establishments, but constitute unlawful discriminations

---

as does Washington-Lee. The grounds are more spacious at Hoffman-Boston for each student, the available play ground greater.

It is fair to say that in classroom instruction the opportunities and facilities offered to the high school student at Hoffman-Boston are greater than those provided at Washington-Lee. This is because, with the physical equipment equal, the Hoffman-Boston boy or girl receives a more individual instruction, enjoys a closer personal relationship to the teach-

er, is subject to a closer study by the teacher for counsel and guidance, receives instruction under a coordination and correlation of subjects, rather than through a departmentalized form of instruction too often delaying the realization of the relationship of all subjects of study. Then, too, at Hoffman-Boston the individuality of the pupil is not "lost in the crowd". These are but the usual advantages to be gained from a school where the scholars are few.

against pupils of the colored race; and it is no defense that they flow in part from variations in the size of the respective student bodies or locations of the buildings. The burdens inherent in segregation must be met by the state which maintains the practice. Nor can it be said that a scholar who is deprived of his due must apply to the administrative authorities and not to the courts for relief. An injured person must of course show that the state has denied him advantages accorded to others in like situation, but when this is established, his right of access to the courts is absolute and complete.

The present case, as we have seen, was brought by three individual students on their own behalf and on behalf of other students in the colored schools of Arlington County similarly situated and too numerous to be brought into court. It is contended that the case must be dismissed on the ground that none of the three named plaintiffs has been deprived of instruction in any subject for which he was qualified and had made a bona fide request. The facts do not sustain the contention in its entirety. The evidence as to Constance Carter tending to show that one or more courses were denied her at Hoffman-Boston is unsatisfactory, and it seems that she has since married and withdrawn from the school. So far as she is concerned, the controversy is at an end.

Upon graduating from junior high school, Peggy Council attended Dunbar High School in Washington for the second semester of the 1947-1948 session for which Arlington County paid the tuition; but in September, 1948, after the county discontinued payment of tuition, she entered Hoffman-Boston. Her testimony was in effect as follows. Prior to leaving Dunbar she had been advised that two years of Latin and some chemistry were prerequisites for a college nursing course which she intended to take after completion of high school, and although she had not taken any Latin at Dunbar, she expected to do so during her last year. Accordingly, she requested Latin on an elective sheet which she filled out while at Dunbar and which was forwarded to Hoffman-Boston when she transferred to that school in September, 1948. While at Hoffman-Boston in May of 1949, she filled out another elective sheet, which she delivered personally to the principal. This card did not mention Latin because she was under the impression that Latin would not be offered at the 1949 fall term at Hoffman-Boston, but upon learning that it would be offered, she submitted another elective card to her teacher in June of 1949 upon which she requested Latin. After transferring to Hoffman-Boston she was told by the principal that she could receive one and one-half years of Latin prior to her graduation and that he would see that she would be allowed to take the remaining one-half year in Washington without much expense to her parents.

None of this testimony was denied by the principal of Hoffman-Boston who testified for the defendants. He merely produced the elective card of May, 1949, and made no reference to the elective card from Dunbar or the elective card handed the teacher in June, 1949. He verified the fact that neither Latin nor chemistry would be given the pupil in the 1949-1950 session. It seems abundantly clear that the school had notice that the student desired Latin in 1949-1950, and that it was refused, although it was given at that time to white pupils.

Julius Brevard attended Armstrong Technical High School in the District of Columbia during the 1948-1949 session and enrolled at Hoffman-Boston in September, 1949 because of the rate of tuition at Armstrong. He testified that he had taken a course in auto mechanics while at Armstrong which included drafting and blueprint reading, but an examination of his transcript from that school fails to disclose any credits for auto mechanics. However, it is not denied that he requested of the principal at Hoffman-Boston on September 6, 1949, the first day of the term, a course in auto mechanics and that he was told that such a course would not be offered at Hoffman-Boston during that term. Two days later he appeared as a witness in the instant case and reaffirmed his desire to take the course. It was held by the trial court that the course was not seriously

pressed by Brevard because the request was made to the principal while he was on his way to his office and he had no opportunity to discuss the matter with the student so as to give a final decision. We do not think that it can be said that the course was refused because of the casual manner in which it was presented. The true reason undoubtedly was that no course in auto mechanics could be taught at Hoffman-Boston because of the lack of suitable facilities and equipment for instruction in this course. White students desiring the course were not required to make a previous application for it. A sufficient showing has been made by Peggy Council and Julius Brevard to justify further proceedings on their behalf in the District Court.

The judgment of the District Court is reversed and the case is remanded for further proceedings.

Reversed and remanded.