Arlene **FLAX**, a Minor, by her Father and Next Friend, Weirleis Flax, Sr., et al., Plaintiffs,

v.

W. S. **POTTS**, President of the Board of Trustees of the Fort Worth Independent School District, a Corporation, et al., Defendants.

**Civ. A. No. 4205.**

United States District Court
N. D. Texas,
Fort Worth Division.

March 1, 1962.

L. Clifford Davis, Fort Worth, Tex., W. J. Durham, Dallas, Tex., for plaintiffs.

Cecil A. Morgan, Fort Worth, Tex., for defendants.

BREWSTER, District Judge.

This suit was brought individually and as a class action to terminate a policy of racial segregation in the public schools within the Fort Worth Independent School District.

The plaintiffs were Sergeant Weirleis Flax, as next friend for his six year old daughter, Arlene, and Herbert Teal, as next friend for the six of his minor children of school age named in the complaint. It was alleged that the action was also prosecuted for the benefit of all other Negro minors similarly situated in the School District. The defendants were the Fort Worth Independent School District, its Board of Trustees, its Superintendent and the principals of the respective schools which refused to enroll the children above mentioned.

The complaint alleged that the Fort Worth public schools were being operated under a system of compulsory racial segregation; that the children named in the complaint were refused enrollment at the schools nearest their respective homes solely on the ground of their race and color; and that such system and discrimination violated the constitutional rights of the plaintiff children and others similarly situated under the Fourteenth Amendment to the federal Constitution. The prayer was for declaratory judgment decreeing the policy of racial segregation to be unconstitutional, for injunctive relief against the continuance of such policy and providing for the termination

thereof, and for specific relief to enable the named children to attend the schools nearest their respective homes without regard to race or color.

The defendants' theory about the alleged policy of racial segregation was summarized in the following statement in its verified answer:

"For more than 78 years Fort Worth Public Schools have been operated under a dual system for white and colored. This pattern of procedure has become a fundamental part of the educational process in Fort Worth, and by experience, training and habit it is a part of the culture of all of the citizens, both white and colored. Both white and colored teachers have been trained in colleges and universities, and by their experience in the classroom to serve the needs of the students operating under the dual system." (Par. 1, under heading "Additional Answer" in Defendants' Answer).

The defendants further alleged that the plaintiffs were not entitled to any relief sought by them on account of their failure to exhaust the administrative remedies under Article 2901a, Texas Civil Statutes.

The Fort Worth Independent School District is supported by public funds and operates a public school system.

The undisputed evidence fully supported the defendants' allegations above quoted about the operation of its school system under a policy of compulsory racial segregation. They defended upon the separate but equal doctrine, as if Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, were still the law. Maps of the area in the School District were offered in evidence by the defendants themselves. Some showed the areas in the district divided into "White Districts". Others showed the same district divided into "Negro Districts". The white and Negro districts were not the same, but they overlapped. A white school served each "White District" and a Negro school served each "Negro Dis-

trict". The result was that a white child and a Negro child similarly situated and qualified, and even living in the same apartment house, would go to different schools. That actually happened in the case of the Flax girl who lived in an apartment house on Carswell Air Base. In many instances, the division into white and Negro districts resulted in Negro children having to travel a considerable distance to attend a school segregated for Negroes when there was a white school near their respective homes. Such was the case with all of the plaintiff children.

At the proper time for enrollment for the school term beginning in September, 1959, the Teal children and the Flax child presented themselves for admission at the public schools for which they were eligible nearest their respective homes. Those happened to be schools segregated for white children. Each plaintiff child was refused admission solely on the ground that he was a Negro. All of them were sent to schools segregated for Negroes a substantial distance away. White children similarly situated and qualified were accepted at the white schools without question during the period at which such schools refused to enroll the plaintiff children. They were not required to resort to administrative procedure to enroll. The Negro children met all the requirements for admission to the schools at which they first applied except those based on race or color.

The plaintiffs filed this suit without resorting to any administrative procedure provided by Article 2901a.

The court entered judgment declaring that the dual racial system under which the Fort Worth schools was being operated violated the constitutional rights of the minor children named in the complaint and of the other members of their class under the Fourteenth Amendment; ordering the defendants to submit a plan, within 30 days after the judgment became final, for effectuating a transition to a racially non-discriminatory system beginning with the 1962 fall

school term; enjoining the defendants and all others acting in concert with them from obstructing or interfering with the orderly administration of any plan approved by the court; and retaining jurisdiction to effectuate the plan. There was no provision in the judgment for assignment of specific children to particular schools.

■ Findings of fact and conclusions of law have been heretofore filed, and they are incorporated herein by reference. It was thought that they would be sufficient; but the defendants' vigorous motion for new trial appears to call for an opinion. There is no intention here to modify the findings of fact or conclusions of law. However, advantage will be taken of the rule that a judgment may be sustained on legal grounds not stated in the conclusions of law.

One matter relating to the form of the findings of fact will be noticed briefly before disposing of the more important questions raised on the trial of the case. The defendants complain of several of the findings of fact on the grounds that they were not "a statement of fact, but mere conclusion", or "The finding is a conclusion and not a finding of fact." The findings were intentionally prepared to give the appellate court the benefit of the inferences and conclusions drawn from the evidence by the judge who had all the advantages that went with the opportunity to see the witnesses and hear the evidence first-hand. Penn-Texas Corp. v. Morse, 7 Cir., 242 F.2d 243; Brown v. American National Bank, 10 Cir., 197 F.2d 911. Findings of fact would be of little benefit to an appellate court if the trial judge were confined to a mere parroting recapitulation of the evidence.

The defendants complain of the court's action in overruling their timely filed written motion requesting a three-judge court under the provisions of Sec. 2281, Title 28, U.S.C., to pass upon the constitutionality of Articles 2900a and 2901a, Texas Civil Statutes. Those statutes will be discussed only briefly at this point, as they will receive detailed attention in connection with another question. They follow generally the type of legislation enacted by several states in the last few years in an effort to defeat or delay racial desegregation in their respective public school systems under the ruling in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. Article 2901a is the Texas Pupil Placement Law. Article 2900a limits the authority of a board of trustees of a public school district to abolish an existing dual system based on racial segregation, and provides severe penalties against the school district and the officials thereof for violations.

■■ The court's ruling on this motion can be sustained upon any one of the four following grounds. This suit was not brought to restrain an officer of the State of Texas in the enforcement or execution of either of these state statutes. Such a requirement must be met to bring a case within the terms of Sec. 2281, Title 28, even though the defendant's pleadings invoke the question of the constitutionality of a state statute. School Board of City of Newport News v. Atkins, 4 Cir., 1957, 246 F.2d 325, 327. Second, the complaint in the present case attacked the policy of a tax-supported public institution based on discrimination against the plaintiffs on account of race and color; and therefore a three-judge court was unnecessary, even though such discrimination had its source in a state statute. Beal v. Holcombe, 5 Cir., 193 F.2d 384; Wichita Falls Junior College Dist. v. Battle, 5 Cir., 204 F.2d 632, cert. den. 347 U.S. 974, 74 S.Ct. 783, 98 L.Ed. 1114. Next, the unconstitutional application of the statutes by the Fort Worth school authorities made it unnecessary to pass upon the constitutionality of the statutes themselves. Shuttlesworth v. Birmingham Board of Education, D.C.Ala., 162 F.Supp. 372, aff. 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145, in an opinion of Judge Rives, holds that a statute may be constitutional on its face and yet be un-

constitutional in its application. See also Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249. An inescapable conclusion from all the evidence was that only Negro children seeking to enroll in a school in a "White District" were required to resort to the administrative procedure under the Pupil Placement Act. White children presented for enrollment at such schools were accepted as a matter of course. There was proof of a specific instance where a white girl the same age as Flax's daughter, living in the identical apartment house on Carswell Air Base and having similar qualifications, was accepted without question when she presented herself for enrollment at the Burton Hill School during the same period at which that school rejected the Flax girl solely on the ground that she was a Negro. The defendants' position has been that if she even wanted to be considered for enrollment at a school in a "White District", she had to pursue the tedious administrative remedies under the state statutes. It is difficult to conceive the kind of case Judge Rives might have had in mind when he wrote the opinion in Shuttlesworth v. Birmingham Board of Education, supra, if this discriminatory policy of the defendants did not make the state statutes in question unconstitutional in their application. Finally, even if the question of the constitutionality of Articles 2900a and 2901a had been before the court in such manner as to require consideration of Sec. 2281, Title 28, a three-judge court would have been unnecessary. Virginia statutes similar in principle to the Texas statutes here involved were held to be so patently and manifestly unconstitutional as not to raise a substantial constitutional question requiring a three-judge court. Adkins v. School Board of City of Newport News, D.C.Va., 148 F. Supp. 430, aff. 4 Cir., 1957, 246 F.2d 325. See also Bush v. Orleans Parish School Board, D.C.La., 138 F.Supp. 336; D.C., 138 F.Supp. 337, aff. 5 Cir., 242 F.2d 156, cert. den. 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436.

The defendants argue that it was error to treat this case as a class action, because one of the two plaintiff fathers testified that he was prosecuting this suit solely for the benefit of his own minor children named in the complaint, while the other one gave no testimony at all on that matter. No question is raised as to the adequacy of the pleadings. The court's ruling is supported by Avery v. Wichita Falls Independent School District, 5 Cir., 1957, 241 F.2d 230, and Orleans Parish School Board v. Bush, 5 Cir., 1957, 242 F.2d 156. Those authorities and many of the other decisions in the school segregation litigation indicate that the fundamental issue and the type of relief required to be granted in such cases have become so well defined that, when the cases are properly pleaded, they can be treated as class actions from the allegations in the complaint and the evidence as a whole satisfactory to the court establishing the requirements usually made in actions representative in form, without any direct statement by the plaintiffs that they are acting for the class. The Wichita Falls case, supra, was held to be a class action even though, as Judge Cameron said in his dissenting opinion at page 244 of 241 F.2d, the matter was contested and put in issue by the pleadings and "no proof at all was offered" to the effect that the plaintiffs claimed to be prosecuting the case as a class action. Judge Tuttle said the following in the Orleans Parish case, supra, 242 F.2d at page 165: "Moreover, it is worthy of note that the series of cases generally known as the School Segregation cases themselves were all class actions in the same sense as is the one before us."

The defendants' contention appears to be founded on the theory that this question was a fact issue in the same sense as any other matter alleged in the complaint. This is not a derivative action purporting to be brought by plaintiffs not only in their own right but also in the right of others. This is a suit representative in form as distinguished from a true representative suit; and the

question of whether it may be maintained as such is not determined on the same basis as the ordinary fact issue. Who ever heard of this kind of issue being submitted to a jury? It is a matter about which the court must be satisfied from the nature of the case and the record as a whole. Some of the factors ordinarily taken into consideration are that the plaintiffs are fairly representative of the class; that there is a common interest; that the other members of the class are so numerous that it would be impracticable to make them parties; that they are not necessary parties; that the result would be conclusive on all parties situated similarly to plaintiffs; that there is no indication that the plaintiffs are bringing the suit in an attempt to make a fraudulent and collusive sacrifice of the rights of other members of the class. The court's action in these suits representative in form is more in the nature of leave granted or refused, and the court has wide discretion in making his decision.

The nature of the plaintiff's cause of action is a strong influence in determining most of the factors listed. Is it the kind of case where other members of the class could oppose and defeat the plaintiff in the assertion of his claim? Would the relief prayed for actually inure to the benefit of all members of the plaintiff's class? There are two features of the plaintiffs' case that must be admitted: first, the right involved is vested by the Constitution in each person as an individual and requires no support in numbers; second, the proper type of relief to be granted inures to the benefit of all the Negro pupils in the school district being sued, even though the plaintiff does not purport to prosecute a class action.

▪ The right safeguarded by the equal protection clause of the Fourteenth Amendment, upon which the decision in the Brown case was based, is vested in each person as an individual. It does not belong to a group or a class, although the enforcement of it by an individual may benefit the members thereof. The number of persons joining or opposing the individual asserting the right does not add to or detract from it. The purpose of including the right in the fundamental law of the land was to insure its availability to the individual regardless of the will of others. The Teal children and the Flax child named in the complaint in this case did not need the support of any other members of their race to enable them to seek redress for the enforcement of their constitutional right of equal protection of the laws.

▪ While the right here involved is vested in each plaintiff as an individual, the benefit resulting from its enforcement certainly inures to all other Negro school children similarly situated. The individual Negro child's right is not limited to mere admission to the public school nearest his home. It is to attend a public school where other members of his race are accepted on the same basis as white children, and where no policy of racial discrimination is practiced or permitted by the school authorities. That such is the underlying premise of the reasoning in the Brown case is evidenced by the following language from the opinion at pages 493–494 of 347 U.S., at page 691 of 74 S.Ct.:

> "* * * In McLaurin v. Oklahoma State Regents, supra, the Court, in requiring that a Negro admitted to a white graduate school be treated like all other students, again resorted to intangible considerations: '* * * his ability to study, to engage in discussions and exchange views with other students, and, in general, to learn his profession.' Such considerations apply with added force to children in grade and high schools. To separate them from others of similar age and qualifications solely because of their race generates a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone. * * *"

The plaintiffs' pleadings in this case were adequate to call for protection of their constitutional right to the fullest extent. As patrons of the Fort Worth school system, they pleaded their case so as to make its main purpose to secure a judgment declaring unconstitutional the dual system based on racial segregation in the Fort Worth public schools, and providing for the termination of such policy with deliberate speed. The fact that their complaint also prayed specifically for relief to enable them to attend the schools nearest their respective homes did not detract from the broader and more fundamental objective of their pleadings. The judgment entered did not provide for specific assignments to particular schools. While the Orleans Parish case, supra, was treated as a class action, the opinion therein states at page 162 of 242 F.2d: " * * * Appellees were not seeking specific assignments to particular schools. They, as Negro students, were seeking an end to a local school board rule that required segregation of all Negro students from all white students. As patrons of the Orleans Parish school system they were undoubtedly entitled to have the district court pass on their right to such relief. * * * "

A judgment declaring unconstitutional a policy of racial segregation in a school system and providing for its termination with deliberate speed is the proper type of relief to be granted in these cases, if the pleadings are broad enough to justify it. The same kind of judgment can be entered regardless of whether the suit is brought as a class action. While the declaratory portion of the judgment entered in this case did adjudge that the dual system in the Fort Worth public schools based on racial segregation violated the constitutional rights of the plaintiffs and of the members of their class, the result would have been the same if the case had not been treated as a class action, and if the judgment had merely declared that the *policy* or *system* of racial segregation violated the rights of the plaintiffs and was unconstitutional.

With proper provisions for injunction, filing of a plan, and judicial supervision during the period of transition, the effect of either type of judgment would have been to end racial segregation in the Fort Worth public schools. Such a judgment necessarily affected, and was binding on, every Negro child in the school district.

While the plaintiff, Teal, did testify that he was suing solely for the benefit of his own children named in the complaint, the other plaintiff father, Flax, gave no such restrictive testimony. He made no direct statement that he was or was not maintaining this suit for the benefit of Negro children situated similarly to his own child. The proof showed at least circumstantially that the prosecution of the case was for the benefit of all the Negro children who might be eligible to attend the Fort Worth public schools. The evidence was not confined to discrimination against the plaintiff Negro children. Most of it related to a general official *policy* of racial segregation affecting every Negro child in the school district. The testimony concerning the rejection of the plaintiff children at schools in the "White Districts" was merely evidence of the application of that policy. It was clear that if the court should enter a judgment going beyond merely requiring that each of the plaintiff children be admitted to the school nearest his home, and granting the broadest relief justified by the pleadings and the evidence, all the Negro children in the school district would benefit just as much as the Flax child and the Teal children, even though the case was not treated as a class action. From a practical standpoint, the judgment entered was binding on all other members of the plaintiffs' class. No other Negro child— nor any one else—could defeat the plaintiffs' right to have the dual system of racial segregation in the public schools declared unconstitutional and to have provision made for its termination with deliberate speed. The retention of jurisdiction by the court until a plan for segregation could be adopted and put into

effect means that no other person may bring a separate suit to litigate questions affecting those matters. The case was fairly and aggressively prosecuted. There was no indication that the plaintiffs were attempting to make a collusive sacrifice of the rights of other Negro school children. What, in reality, would a mere direct statement by Flax that he was prosecuting the suit for all the Negro children in the Fort Worth school district have added to this record?

The type of action brought by the plaintiffs, and the pleadings and the evidence as a whole, justified the court in determining in his discretion that this case should be treated as a class action. Even if that decision were incorrect, the defendants suffered no injury, in view of the nature of relief to which plaintiffs were entitled and the type of judgment entered.

The defendants next contend that the court erred in failing to require the plaintiffs to exhaust the administrative remedies under Article 2901a, Texas Civil Statutes before entertaining their suit to end segregation in the Fort Worth public schools.

Article 2901a is the Texas Pupil Placement Law following generally the type of legislation recently enacted by some states to defeat or delay the desegregation of their public schools under the decision in the Brown case. It provides for creation by a school board of administrative agencies to hear applications of pupils desiring to transfer from a school to which he is assigned. Detailed standards are set out for determining questions raised by complaints of students in such hearings. Sec. 4 provides that no matter "relating to the national origin of the pupil or the pupil's ancestral language" shall be considered in evaluating a petition. Sec. 8 says that, "Any other provision of the law notwithstanding, no child shall be compelled to attend any school in which the races are commingled when a written objection of the parent or guardian is filed with the Board, if

such be the decision of the Local Board. * * * "

Article 2901a was enacted by the 55th Legislature. The same Session of that Legislature also enacted Article 2900a. Both statutes became effective on the same day in August, 1957. Section 1 of Article 2900a sets out: "That no board of trustees nor any other school authority shall have the right to abolish the dual public school system nor to abolish arrangements for transfer out of the district for students of any minority race, unless by a prior vote of the qualified electors residing in such district the dual system therein is abolished." To insure obedience of the statute, harsh penalties are provided against the public generally, as well as against the offending trustees individually in case of violations. The school district suffers by becoming ineligible to receive its share of state school funds, the students of the district by losing their accreditation, and the trustees by being subject to a fine ranging from $100 to $1,000.

The purpose, subject-matter, circumstances of passage, and identical effective dates of these two statutes bring them within the rule stated in Adkins v. School Board of City of Newport News, D.C.Va., 1957, 148 F.Supp. 430, at 433, aff. 4 Cir., 1957, 246 F.2d 325, cert. den., 355 U.S. 855, 78 S.Ct. 83, 2 L. Ed.2d 63: " * * * Statutes having the same general purpose, relating to the same class of subjects, constituting parts of the same general plan, and aimed at the accomplishment of the same results, are all considered together. * * * "

The plaintiffs in this case were not required to resort to the administrative remedies under Article 2901a for each of the following reasons:

*First*, resort to such remedy is not required where the school district has a fixed policy of racial segregation. In Gibson v. Board of Public Instruction of Dade County, 5 Cir., 1957, 246 F.2d 913, at 914, Judge Rives said:

"The appellees urge also that the judgment should be affirmed because

the plaintiffs have not exhausted their administrative remedies under the Florida Pupil Assignment Law of 1956, Chapter 31380, Laws of Florida, Second Extraordinary Session 1956, F.S.A. § 230.–231. Neither that nor any other law can justify a violation of the Constitution of the United States by the requirement of racial segregation in the public schools. So long as that requirement continues throughout the public school system of Dade County, it would be premature to consider the effect of the Florida laws as to the assignment of pupils to particular schools."

The same rule is followed in School Board of City of Charlottesville v. Allen, 4 Cir., 1956, 240 F.2d 59, and School Board of City of Newport News v. Atkins, 4 Cir., 1957, 246 F.2d 325.

The defendants' verified pleadings, the testimony of the school officials, and the evidence as a whole established without doubt that the Fort Worth school system had a fixed policy of racial segregation at the time of the trial and for 78 years prior thereto. The testimony of the school officials made no concession on account of the decision in the Brown case. They attempted to justify their dual system under the separate but equal doctrine formerly recognized under Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, as if it had never been rejected by the Brown case. Their sworn pleadings stated that such system had "become a *fundamental part of the educational process* in Fort Worth," and "by experience, training and habit * * *a part of the culture of all the citizens*, both white and colored." A fixed racial segregation policy of school authorities could not be any more conclusively established than it was in this case.

■ *Second,* it was undisputed that the plaintiff children were refused enrollment in the schools nearest their homes solely on account of their race or color. In Borders v. Rippy, 5 Cir., 1957, 247 F.2d 268, at 271, the Court said:

"The appellees insist that the judgment should be affirmed because of the failure of pleading or proof to show that each plaintiff has exhausted his administrative remedies, under Article 2654–7 of the Revised Civil Statutes of Texas, Vernon's Ann.Civ.St., by appeal to the State Commissioner of Education. Texas State Law gave the Board and the Superintendent the power to act, and, in the exercise of such power, they denied the plaintiffs the right to attend public schools of their choice solely on account of their race or color. By such action the plaintiffs have been deprived of their constitutional rights, and they are not required to seek redress from any administrative body before applying to the courts. Bruce v. Stilwell, 5 Cir., 1953, 206 F.2d 554, 556; Carter v. School Board of Arlington County, Va., 4 Cir., 1950, 182 F.2d 531, 536; Bush v. Orleans Parish School Board, D.C.E.D.La., 1956, 138 F.Supp. 337, 341, affirmed in Orleans Parish School Board v. Bush, 5 Cir., 1957, 242 F.2d 156, 162; see also Browder v. Gayle, D.C. M.D.Ala.1956, 142 F.Supp. 707, 713, affirmed per curiam 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114."

■ *Third,* the judgment in this case made no provision for specific assignments to particular schools. The distinction between a judgment making such provision and one declaring unconstitutional a policy of racial segregation and requiring it brought to an end has already been pointed out in a quotation from the Orleans Parish case, supra. The Newport News case, the Dade County, Fla. case and the Charlottesville, Va., case, all cited above, also recognize that assignment of a Negro child to a particular school is not necessary to the enforcement of his constitutional right to have a policy of racial segregation terminated in this public school system. Judge Parker, in the Charlottesville case, at 240 F.2d 61, emphasized the impor-

**468**

tance of the distinction in the following language:

> "The foregoing general language of the decree was limited by paragraph 4 thereof, which made clear that the court was not attempting to direct how the school board should handle the problem of assigning pupils but was merely forbidding unconstitutional discrimination on the ground of race or color. * * *"

The Texas Pupil Placement Law deals only with assignments and transfers of pupils to particular schools. When the judgment in this case granted only the broader type of relief prayed for, the question of resort to administrative remedies to secure assignment to a particular school became immaterial.

*Fourth,* the administrative remedy provided by Article 2901a, when construed as it must be in connection with Article 2900a, was wholly inadequate. The statutes themselves and the undisputed evidence bring this case within the rule stated in School Board of City of Newport News v. Atkins, 4 Cir., 1957, 246 F.2d 325, at 326:

> " * * * As pointed out by the judge below, however, this statute furnishes no adequate remedy to plaintiffs because of the fixed and definite policy of the school authorities with respect to segregation and because of the provisions of chapter 68 of the Acts of the Extra Session, which provide for the closing of schools and withdrawal therefrom of state funds upon any departure from this policy in any school. Orleans Parish School Board v. Bush, 5 Cir., 242 F.2d 156, 162, certiorari denied [354 U.S. 921] 77 S.Ct. 1380, [1 L.Ed.2d 1436]"

The procedure was also inadequate under the reason given in Bruce v. Stilwell, 5 Cir., 1953, 206 F.2d 554, which appears in the following quotation from syllabus 2 of that case:

> "Negro students who were refused admission to a Texas junior college because of their race could institute action in federal court for relief by way of declaratory decree and injunction without having instituted any administrative proceedings, where no administrative agency had been set up under Texas law with authority or jurisdiction to determine constitutional question."

In connection with the rule just stated, the Bruce case quotes the following from Henderson v. Miller, Tex.Civ.App., 286 S.W. 501, 506, writ refused:

> "It is manifest that neither the board of county school trustees, nor the state superintendent, nor the state board of education, is vested with any jurisdiction to determine the constitutionality of any statute, or the question whether or not any action by any board of * * * trustees is violative of constitutional rights. *Authority to determine such questions is exclusively the function of the judiciary * * *.*" (Emphasis ours.)

The real impotence of a school board confronted with statutes such as Articles 2900a and 2901a is evidenced by the decisions in Dallas Independent School District v. Edgar, 5 Cir., 1958, 255 F.2d 455, and Dallas Independent School District v. Edgar, Tex.Civ.App., 328 S.W.2d 201, ref., n. r. e. The school trustees went to the federal court seeking relief by declaratory judgment from the harsh provisions of Article 2900a, after they had been ordered to desegregate the schools in their district. That they recognized not only their own lack of power to pass on the constitutionality of the statute, but also their lack of right to complain to a court that it was unconstitutional, is evidenced by the following statement from the federal court opinion at page 457 of 255 F.2d: "The appellants' brief asserts that it, being a creature of the state and 'owing its existence to legislative enactment, * * could not complain of an unconstitutional act.'" After dismissal of the action on the ground that there was no justiciable controversy, the school trustees took their case to the state court. It was

there held in the Court of Civil Appeals case above cited that the suit could not be maintained because it was in reality one against the State.

The authority given administrative bodies such as those created under Article 2901a is only "of a fact-finding and administrative nature." Carson v. Warlick, 4 Cir., 1956, 238 F.2d 724, 728. There was no fact question for the administrative agency to decide in the present case. The only ultimate facts *material to the relief granted* were that the Fort Worth public school system was operated under a policy of racial segregation, and that the children named in the complaint were eligible to attend that school system. Those facts were never in dispute. The only question was one of federal constitutional law which the administrative body had no power to decide.

The administrative procedure provided by Article 2901a has the same shortcomings as those pointed out in the cases cited in the discussion of this point, and more. On its face and standing alone, Article 2901a might measure up to the Pupil Placement Statutes of North Carolina, Alabama and Arkansas which were held valid in Carson v. Warlick, supra, Shuttlesworth v. Birmingham Board of Education, supra, and Parham v. Dove, 8 Cir., 1959, 271 F.2d 132, respectively, except that some suspicion of the real purpose of the statute might be raised by Sec. 8 thereof. However, Article 2901a cannot be divorced from 2900a, as the first one purports to set up a fair administrative procedure and the other one in effect makes a mockery of it. The injunction in Sec. 4 of Article 2901a against considering racial matters in evaluating a pupil's petition would appear to be an effort to protect the constitutional rights of school children. What happens, though, where the administrative body gives recognition to such right and assigns a Negro child to a white school in a school district operating under a dual system? The school district loses its share of the state funds, and that would amount to a closing of the schools in most instances. It becomes ineligible for accreditation, with the result that the credits of its pupils moving to other districts or applying for admission to college would not be accepted. All participants in the assignment of the one Negro child that would end the dual system would be subject to a fine from $100 to $1,000. School trustees and other like administrative bodies would have to accept the statutes as valid. They lack the power not only to determine, but also to question, the constitutionality of a statute under which they operate. Dallas Independent School District v. Edgar (federal case); Bruce v. Stilwell; Henderson v. Miller, Tex. Civ.App., all cited supra. Imagine the awesomeness of the decision confronting a conscientious, fair-minded administrative body operating under Article 2901a, charged on the one hand not to discriminate on racial grounds, but told at the same time that if they should fail so to discriminate in a school district being conducted under a dual racial system, they would be fined personally and irreparable and lasting punishment would be visited upon all of the children in the district.

*Fifth,* resort by the plaintiffs to the administrative remedies under Article 2901a would have been futile. Judge Rives, in Gibson v. Board of Public Instruction of Dade County, 5 Cir., 1957, 246 F.2d 913, quoted with approval the following from an opinion by Chief Judge Parker in School Board of City of Charlottesville v. Allen, 4 Cir., 1956, 240 F.2d 59, 63:

"Defendants argue, in this connection, that plaintiffs have not shown themselves entitled to injunctive relief because they have not individually applied for admission to any particular school and been denied admission. The answer is that in view of the announced policy of the respective school boards any such application to a school other than a segregated school maintained for Colored people would have been futile; and equity does not require the do-

ing of a vain thing as a condition of relief."

Bush v. Orleans Parish School Board, D.C., La., 138 F.Supp. .337, aff. 5 Cir., 1957, 242 F.2d 156, cert. den. 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436, held:

" * * * To remit each of these minor children and the thousands of others similarly situated to thousands of administrative hearings before this Board, to seek the relief to which the Supreme Court of the United States has said they were entitled, would be a vain and useless gesture, unworthy of a court of equity. * * * "

The pleadings and the evidence in this case showed that, at the time of the trial and at all other times material to the issues herein, the Fort Worth public school system was being operated under a fixed policy of racial segregation that would not be changed in the reasonably forseeable future except by court order. It has already been shown that the verified pleadings of the defendants declared that the dual system in such school system based on race and color had become "a fundamental part of the educational process of Fort Worth." The evidence was stronger than the pleadings. The school officials who testified were open, frank and straightforward in their advocacy of the dual system. They did not apologize or seek to evade the issue. The effect of their testimony was that a study of the question of racial segregation in the Fort Worth school system began about 1946, around eight years before the decision in the Brown case. The study had continued down to the time of the trial. The first conclusion arrived at was that the racially segregated system was the best for both whites and Negroes. The school officials then set out to make the Negro schools equal to the white schools, and felt that they had done so. The more they studied the more convinced they became, until at the time of the trial they testified that they believed the dual system under which the Fort Worth schools was being operated was the best in the United States.

As was stated in the findings of fact, there is no intention to impugn the integrity or sincerity of the school trustees and administrative officials. The fact that they are so sincere in their deep-rooted belief makes it even more unlikely that they will abandon the dual system until compelled to do so by court order.

In determining whether resort by the plaintiffs to the administrative remedies would have secured the relief to which they were entitled, the question must be viewed from the standpoint of the administrative body. The original hearing was required to be held before one of the administrative officers of the defendant School District designated by the defendant Board of Trustees. An appeal would have gone to the Board of Trustees. They could not override or declare invalid any state statutes. Their only power was to decide fact questions. There was no dispute about the fact that the only reason for rejecting any of the plaintiff children when they applied for enrollment at the time in question was that they were Negroes. At the time of the trial, all of them had been students in the schools in the "Negro Districts" for more than two years since they were rejected at the segregated white schools. The defendants insisted that the facilities, standards and teachers were equal in the white and Negro schools. There was no suggestion of any development in connection with any of the plaintiffs, since the time of their rejection, that would have raised any fact issue under Article 2901a. The undisputed evidence showed that the administrative body or bodies before whom the plaintiffs would have had to go were composed of persons who believed in, and considered themselves bound by, the policy of racial segregation that had become "a fundamental part of the educational process of Fort Worth".

The fact that the defendants have taken no step to abandon their policy of racial segregation during the months in-

tervening between the time the plaintiffs made their complaint about such policy and the date of the trial shows the futility of the administrative process. The defendants have based their position on the administrative procedure question on the narrow ground that the full extent of any possible claim of the plaintiffs was to get transferred to a white school. The defendants have never recognized that any one of these plaintiff children, as well as any other Negro student in the school district, had a constitutional right to have the *policy* of racial segregation abolished. The children did not have to go before an administrative body to establish or enforce that right. It was only logical to believe from the defendants' inaction after the plaintiffs asserted their claim that they intended to stay with their dual system. A court would have to be naïve to come to the conclusion that resort to administrative process under Article 2901a would have brought an end to that system.

In support of their contention that the plaintiffs should have been compelled to resort to the administrative remedies, the defendants rely upon Shuttlesworth v. Birmingham Board of Education, Carson v. Warlick, and Parham v. Dove, cited in the first part of the discussion of this question. Those cases could be distinguished on many grounds; but it is deemed sufficient to point out here: (1) There was no showing in any of those cases that any discriminatory action on racial grounds had been taken against the plaintiffs, nor was there any proof of a firmly fixed policy of racial segregation in the schools. (2) While each one of the states involved had a statute similar to our Article 2901a, except for Sec. 8 thereof, none of them had a statute that would compare with our Article 2900a. These distinctions are supported by the Orleans Parish, the Dade County, the City of Charlottesville, the Newport News, and the Dallas (Borders v. Rippy) cases cited above in connection with this point.

The defendants' motion for new trial is overruled.