Louis McNEESE, a minor, by Mabel McNeese, his mother and next friend,

and

Elouise Dickerson, a minor, by Charles Dickerson, her father and next friend,

and

Betty Wade and Judith Wade, minors, by Thelma Wade, their mother and next friend,

and

For those and all others similarly situated and who may become parties to this action, Plaintiffs,

v.

BOARD OF EDUCATION FOR COMMUNITY SCHOOL DISTRICT NUMBER 187

and

Clarence D. Blair, County Superintendent of Schools for St. Clair County, Illinois,

and

Robert F. Catlett, Superintendent of Schools for Community School District Number 187, Defendants.

Civ. A. No. 4868.

United States District Court
E. D. Illinois.
Nov. 22, 1961.

404

Clayton R. Williams, Alton, Ill., and Rogers, Rogers, Strayhorn & Harth, Charles Jones, Jr., Chicago, Ill., Richard G. Younge, East St. Louis, Ill., for plaintiffs.

Oehmke, Dunham & Boman, East St. Louis, Ill., for defendants Bd. of Education and Robert F. Catlett.

JUERGENS, District Judge.

This class action was instituted by the minor plaintiffs, who appear by their parents and next friends. Plaintiffs are citizens of the State of Illinois and reside within the Eastern District of Illinois.

Jurisdiction is founded on Title 28 U.S.C.A. § 1343(3), and authorized by Title 42 U.S.C.A. § 1983.

The amended complaint alleges that the minor plaintiffs are all Negro children, are eligible to attend public elementary schools in Community Unit School District No. 187, which schools are under the management and control of defendants; that the members of the class in behalf of which plaintiffs sue are so numerous as to make it impracticable to bring them all individually before the Court, but there are common questions of law and fact involved, common grievances arising out of common wrongs, and common relief is sought for each plaintiff and each member of the class, and the plaintiffs fairly and adequately represent the interests of the class; that the defendants are presently maintaining and operating public schools in the area or areas of the respective jurisdictions in purported pursuance of the laws of the State of Illinois; that the defendants have adopted and pursued and are presently pursuing a policy, custom and practice in assigning children to the elementary public schools in accordance with "neighborhood school policy" or "attendance area policy," where children are compelled to attend schools in the attendance areas in which they reside and are not permitted to attend schools in any other place except in certain special circumstances not applicable to these plaintiffs; that the Chenot School was put into operation in 1957 and was planned and built and its attendance area boundaries were so drawn as to make it an exclusively Negro school in its student enrollment; that as a direct, proximate and foreseeable result of the defendants' adoption and strict pursuance of the alleged "neighborhood school policy" or "attendance area policy", defendants have created and do maintain and operate racially segregated elementary schools and the minor plaintiffs are compelled to attend a racially segregated school by actions of the defendants herein; that prior to 1957 when the Chenot School was put into operation, Negro elementary school students residing in what is now the Chenot attendance area attended the Centreville School, where said Negro children were compelled to attend classes in the afternoon exclusively, while white children attended classes in the morning exclusively with the exception of certain slow white fifth and sixth grade students

who attended classes all day; that when the Chenot School was put into operation, all or practically all of the children of elementary school age who resided in the Chenot attendance area were Negroes; that the manner in which the Chenot attendance areas were drawn resulted in making Chenot School an all Negro school in the student enrollment; that because of the crowded condition of the Centreville School, the Board of Education transferred all fifth and sixth grade classes at Centreville School to Chenot School; that these classes consisted of approximately 97% white and 3% Negro students; that these classes were kept and maintained intact at the Chenot School despite the fact that the children so involved were carried on the rolls as Chenot students and their teachers as members of the Chenot faculty; that as a result of the above and foregoing a situation of racial segregation and separate educational facilities was created and has been maintained by the defendants; that the conditions created continue to exist; that the defendants have failed and refused to desegregate the schools under their jurisdiction but act in such a manner to perpetuate the system of segregated schools and facilities; that by reason of the "neighborhood school policy" or "attendance area policy" as adopted and enforced by the defendants and as a result of the schemes, plans and contrivances of the defendants in drawing the boundary lines in the schools under their jurisdiction, the defendants have created and are maintaining and operating racially segregated public elementary schools in District No. 187 and the minor plaintiffs are assigned to and compelled to attend such racially segregated school by the acts of the defendants and consequently are denied the equal protection of law and equal opportunity for education to which they are entitled by reason of law; that requiring plaintiffs and their class to attend the segregated schools and educational facilities causes them to suffer and sustain irreparable injury and they will be irreparably harmed unless the defendants are enjoined by

this Court; that any other relief to which plaintiffs could be remitted would be attended by such uncertainties and delays as to deny plaintiffs the substantial relief to which they are entitled; that plaintiffs have not exhausted any administrative remedies provided by the laws of the State of Illinois for the reason that the remedy there provided is inadequate to provide the relief sought by the plaintiffs. The plaintiffs pray that this Court enter an order adjudging and declaring the "neighborhood school policy" or "attendance area policy" as employed by the defendants to be illegal and unconstitutional and in violation of plaintiffs' rights and for other and further relief.

The Board of Education and Robert F. Catlett filed their motions to dismiss the complaint and motions for preliminary injunction. Thereafter, plaintiffs asked and were granted permission to file their amended complaint, the pertinent portions of which are above set out. They do not ask for a preliminary injunction in their amended complaint.

The Board of Education's and Robert F. Catlett's motions to dismiss the amended complaint are before the Court.

The question at this point is limited; it is one of procedure and not of substance; it is one of mere practice and not of merit.

At this juncture the question for the Court to determine is not whether the plaintiffs have been denied the equal protection of the laws guaranteed to them by the Fourteenth Amendment but whether they have in the first instance proceeded in the proper manner for securing the remedies which have been provided (by the State of Illinois with an administrative review proceeding) in the event that their constitutional rights have been denied to them.

In support of their motions to dismiss the amended complaint, the Board of Education and Robert F. Catlett assert, among other things, that the plaintiffs have failed to exhaust the procedures provided under the laws of the State of Illinois, which provide remedies to per-

sons aggrieved for the reasons complained of in the complaint.

 Where a state law provides adequate administrative procedure for the protection of rights, the federal courts manifestly should not interfere with the operation of the schools until such administrative procedure has been exhausted and the intervention of the federal courts is shown to be necessary. Parham v. Dove, 8 Cir., 1959, 271 F.2d 132. Covington v. Edwards, 4 Cir., 1959, 264 F.2d 780.

Section 22–19, Chapter 122, Illinois Revised Statutes, 1961, provides as follows:

"Sec. 22–19. Upon the filing of a complaint with the Superintendent of Public Instruction, executed in duplicate and subscribed with the names and addresses of at least 50 residents of a school district or 10%, whichever is lesser, alleging that any pupil has been excluded from or segregated in any school on account of his color, race, nationality, religion or religious affiliation, or that any employee of or applicant for employment or assignment with any such school district has been questioned concerning his color, race, nationality, religion or religious affiliation or subjected to discrimination by reason thereof, by or on behalf of the school board of such district, the Superintendent of Public Instruction shall promptly mail a copy of such complaint to the secretary or clerk of such school board.

"The Superintendent of Public Instruction shall fix a date, not less than 20 nor more than 30 days from the date of the filing of such complaint, for a hearing upon the allegations therein. He may also fix a date for a hearing whenever he has reason to believe that such discrimination may exist in any school district. Reasonable notice of the time and place of such hearing shall be mailed to the secretary or clerk of the school board and to the first subscriber to such complaint. 

"The Superintendent of Public Instruction may designate an assistant to conduct such hearing and receive testimony concerning the situation complained of. The complainants may be represented at such hearing by one of their number or by counsel. Each party shall have the privilege of cross examining witnesses. The Superintendent of Public Instruction or the hearing officer appointed by him shall have the power to subpoena witnesses, compel their attendance, and require the production of evidence relating to any relevant matter under this Act. Any Circuit or Superior Court of this State, or any judge thereof, either in term time or vacation, upon the application of the Superintendent of Public Instruction or the hearing officer appointed by him, may, in its or his discretion, compel the attendance of witnesses, the production of books, papers, records or memoranda and the giving of testimony before the Superintendent of Public Instruction or the hearing officer appointed by him conducting an investigation or holding a hearing authorized by this Act, by an attachment for contempt, or otherwise, in the same manner as production of evidence may be compelled before said court. The Superintendent of Public Instruction or the hearing officer appointed by him may cause the depositions of witnesses within the State to be taken in the manner prescribed by law for like depositions in civil actions in courts of this State, and to that end compel the attendance of witnesses and the production of books, papers, records or memoranda. All testimony shall be taken under oath administered by the hearing officer, but the formal rules pertaining to evidence in judicial proceedings shall not apply. The Superintendent of Public Instruction shall provide a competent reporter to take notes of all testimony. Either party desiring a transcript of the hearing shall pay for the cost of such

transcript. The hearing officer shall report a summary of the testimony to the Superintendent of Public Instruction who shall determine whether the allegations of the complaint are substantially correct. The Superintendent of Public Instruction shall notify both parties of his decision. If he so determines, he shall request the Attorney General to apply to the appropriate circuit court for such injunctive or other relief as may be necessary to rectify the practice complained of.

"The provisions of the 'Administrative Review Act', approved May 8, 1945, and all amendments and modifications thereof and the rules adopted pursuant thereto shall apply to and govern all proceedings for the judicial review of any final decision rendered by the Superintendent of Public Instruction pursuant to this Section."

Plaintiffs assert that the remedy provided by the statute, hereinabove set out, does not provide an adequate procedure whereby plaintiffs may present their case for consideration before an administrative agency in that a judicial remedy is provided by the statute rather than an administrative remedy; that there is no individual right since it is required that there be 50 signatures on the complaint and further that notice is sent only to the first person on the petition; that there is no action in behalf of an individual but rather the action is in behalf of the State of Illinois and thus there is no right of counsel or redress of wrong by an individual.

The plaintiffs' contention that an administrative remedy is not provided by the statute above is without merit. By the statute the Superintendent of Public Instruction or an assistant designated by him is charged with the responsibility of conducting a hearing to determine the validity of the complaint authorized to be filed under the statute. The complainants are specifically granted the right of representation by counsel and are further granted the privilege of cross examination.

The action instituted here is a class action, wherein the plaintiffs seek to have this Court enter a remedial order in favor of the entire class and in the words of the complaint the entire school area here involved is comprised of persons who it is alleged by the complaint are aggrieved and for whom relief is sought. Thus, it would appear that had the plaintiffs sought to obtain the signatures of a sufficient number of persons to proceed under the statute, there in all likelihood would have been little difficulty in obtaining the number of signatures required.

Plaintiffs, however, have not endeavored by any manner or means to attempt a proceeding under the statute but rather have elected to ignore the statute and thereby deprive the State of Illinois the opportunity to rectify its own wrong if it is found that one does exist.

It may well be that an attempt by plaintiffs to meet the requirements of the statute may be unsuccessful in that they may not be able to obtain a sufficient number of signatures on the complaint, or it may be impossible for plaintiffs to cause the Superintendent of Public Instruction to intercede on his own volition; yet, the Court is of the opinion that until the plaintiffs have attempted to avail themselves of the provisions that the administrative review provides, they have failed to comply in the remotest manner with the administrative remedy provisions, and until at least an honest attempt is made to pursue that remedy, this Court should not interfere with the state authorities and deprive them of the opportunity to put their own house in order. Since the plaintiffs have failed to pursue or even attempt to pursue the administrative remedy provided, this Court should not entertain this cause of action.

The mere assertion by plaintiffs that the administrative review provided for under the laws of the State of Illinois is inadequate, without first having attempted to utilize that remedy, does not show

this Court that the administrative review is in fact ineffective to produce the result attempted by the statute and desired herein by these plaintiffs.

The motions to dismiss the amended complaint will be allowed.