Ellen SHEPARD, minor, by Joseph Shepard and Louise Shepard, etc., et al., Plaintiffs,

v.

The BOARD OF EDUCATION OF the CITY OF ENGLEWOOD et al., Defendants.

Civ. A. No. 106-62.

United States District Court
D. New Jersey.
July 9, 1962.

George D. Jeter, Millburn, N. J., Paul B. Zuber, Croton-on-Hudson, N. Y., of counsel, for plaintiffs.

Arthur J. Sills, Atty. Gen. of New Jersey, by Theodore I. Botter, Asst. Atty. Gen., and Thomas F. Tansey, Deputy Atty. Gen., Abram A. Lebson, Englewood, N. J., for defendants.

AUGELLI, District Judge.

This is an action by infant plaintiffs, appearing by their parents and next friends, to enjoin defendants from operating and maintaining a racially segregated public elementary school system in the City of Englewood, and for other relief. Plaintiffs are all citizens of the United States who reside in Englewood and attend the public elementary schools of that City. All are members of the Negro race and they bring the action on their own behalf and on behalf of other Negro children similarly situated.

Defendants are the Board of Education of the City of Englewood; Harry Stearns, as Superintendent of Schools of said City; and Frederick Raubinger, as Commissioner of Education of the State of New Jersey.

The action is based upon the Civil Rights Act, 42 U.S.C.A. § 1983, jurisdiction being invoked pursuant to 28 U.S.C.A. § 1343(3).

Plaintiffs allege that in making assignments of children to the public schools of Englewood, defendant Board of Education and defendant Superintendent of Schools, with the consent and condonation, and under the direction of defendant State Commissioner of Education, pursue what is commonly known as the "neighborhood school policy"; that the utilization of this policy has resulted in racially segregated schools in Englewood; that the maintenance of said policy, as a basis for the registration of children in the public schools of Englewood, is contrary to the laws of the United States; that the school boundary lines in Englewood have been drawn and periodically altered for the purpose of requiring infant plaintiffs and other members of their class to attend racially segregated schools; that sites for the construction of new schools have been selected in such manner as to further perpetuate and maintain a racially segregated public school system in Englewood; that white students have been permitted to transfer from schools with all Negro or predominantly Negro student enrollments to schools with predominantly white student enrollments, but that infant plaintiffs and others in their class have not been permitted to enroll in racially desegregated schools; that plaintiffs are injured by the refusal of the local school authorities to cease operating under the "neighborhood school policy" in Englewood; and that the operation of such policy, and the racially segregated schools resulting therefrom, violates the rights secured to plaintiffs and members of their class by the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution.

The Attorney General of New Jersey, on behalf of the State Commissioner of Education, moves to dismiss the action on the ground that plaintiffs have failed to exhaust available state administrative remedies; or, in the alternative, to stay the proceedings and hold the action in abeyance pending exhaustion of said administrative remedies.

A similar motion to dismiss the complaint, and for the same reason, is made by counsel for the Englewood Board of Education and the Superintendent of Schools.

■ As a general rule, available state administrative remedies must be exhausted before resort is had to the courts. Application of the doctrine promotes orderly procedure. The expertise of administrative agencies in their respective fields make a real contribution to the administration of justice. Until such time as there has been an exhaustion of administrative remedies, an asserted right or claim is not ripe for judicial determination. Of course, where it appears that nothing would be gained by utilizing available state administrative remedies in the first instance, the party seeking judicial relief will not be required to perform a futile act.

The rationale of the exhaustion doctrine has been aptly stated in 42 Am. Jur., Public Administrative Law, § 197, as follows:

"In its function the doctrine is one of various devices by which the courts deny premature or unnecessary resort to the courts, and, therefore, is very often rationalized on the same grounds which are advanced to justify the requirement of administrative finality as a prerequisite to judicial relief. * * * The doctrine involves a policy of orderly procedure which favors a preliminary administrative, sifting process, particularly with respect to matters peculiarly within the competence of the administrative authority, and serves to prevent attempts 'to swamp the courts by a resort to them in the first instance'. The courts also have emphasized that the doctrine rests on considerations of comity and convenience and is of especial force when resort is had to the Federal courts to restrain the action of state officers. The doctrine is sometimes said to rest upon the presumption that the administrative agency, if given a complete chance to pass upon the matter, will decide correctly." (Footnotes omitted)

It is admitted by plaintiffs that they have made no effort to exhaust the administrative remedies available to them under the laws of the State of New Jersey. In substance, plaintiffs argue: that the exhaustion of state administrative remedies is not a prerequisite to the institution of an action in a federal court challenging the maintenance of a racially segregated public school system; that whatever remedy is provided by the laws of the State of New Jersey is judicial rather than administrative in nature; that the State Commissioner of Education has no power or authority to give plaintiffs the relief they seek; and that the doctrine of exhaustion of state administrative remedies, even in cases where it has been held to apply, has no application where, as is claimed here, the administrative remedy is inadequate.

The Court cannot agree with plaintiffs' contention that where the maintenance of a racially segregated school system is challenged, the exhaustion of state administrative remedies is not a prerequisite to the institution of an action in a federal court.

The rule requiring exhaustion of available state administrative remedies before the jurisdiction of a federal court may be invoked has been applied many times in school segregation cases. See Carson v. Board of Education, 227 F.2d 789 (4 Cir. 1955); Carson v. Warlick, 238 F.2d 724 (4 Cir. 1956); Robinson v. Board of Education, 143 F.Supp. 481 (D.Md.1956); Jeffers v. Whitley, 165 F.Supp. 951 (M.D.N.C.1958); Covington v. Edwards, 264 F.2d 780 (4 Cir. 1959);

McKissick v. Durham City Board of Education, 176 F.Supp. 3 (M.D.N.C.1959); Parham v. Dove, 271 F.2d 132 (8 Cir. 1959); McNeese v. Board of Education, 199 F.Supp. 403 (E.D.Ill.1961).

There are also school segregation cases in which the federal courts have declined to apply the exhaustion doctrine. See Orleans Parish School Board v. Bush, 242 F.2d 156 (5 Cir. 1957); School Board of City of Newport News, Va. v. Atkins, 246 F.2d 325 (4 Cir. 1957); Borders v. Rippy, 247 F.2d 268 (5 Cir. 1957); Kelly v. Board of Education, 159 F.Supp. 272 (M.D.Tenn.1958); Beckett v. School Board, 185 F.Supp. 459 (E.D. Va.1959); Farley v. Turner, 281 F.2d 131 (4 Cir. 1960); Mannings v. Board of Public Instruction, 277 F.2d 370 (5 Cir. 1960); Flax v. Potts, 204 F.Supp. 458 (N.D.Tex.1962).

Thus, whether a federal court will exercise or decline to exercise its jurisdiction in a school segregation case without first requiring the exhaustion of available state administrative remedies must depend upon the facts of each case.

We now turn our attention to the provisions of New Jersey law which, defendants say, afford plaintiffs an adequate state administrative remedy in this case, N.J.S.A. 18:3–14 and 15.

N.J.S.A. 18:3–14 reads as follows:

"The commissioner [Commissioner of Education of the State of New Jersey] shall decide without cost to the parties all controversies and disputes arising under the school laws, or under the rules and regulations of the state board or of the commissioner.

"The facts involved in any controversy or dispute shall, if required by the commissioner, be made known to him by the parties by written statements verified by oath and accompanied by certified copies of all documents necessary to a full understanding of the question.

"The decision shall be binding until a decision thereon is given by the state board on appeal." .

N.J.S.A. 18:3–15 provides, in part:

"Decisions under section 18:3–14 of this title are subject to appeal to the State board.

"All such appeals shall be taken within thirty days after the decision is filed, and in the manner prescribed by the State board."

Another section of the school law (N.J.S.A. 18:14–2) provides, in part:

"No child between the ages of four and twenty years shall be excluded from any public school on account of his race, creed, color, national origin, or ancestry."

N.J.S.A. 18:3–14, when read in conjunction with N.J.S.A. 18:14–2, would appear to confer upon the State Commissioner of Education jurisdiction to decide disputes involving racial discrimination in the public schools of New Jersey.

■ Plaintiffs argue that the remedy provided by these statutes is judicial rather than administrative in . nature, and hence the doctrine of exhaustion does not apply. It is true that where a person asserts the violation of a federal constitutional right or privilege, he need not first exhaust the *judicial* remedies provided by state law before resorting to a federal court. Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); Mitchell v. Wright, 154 F.2d 924 (5 Cir. 1946); Baron v. O'Sullivan, 258 F.2d 336 (3 Cir. 1958); Dove v. Parham, 282 F.2d 256 (8 Cir. 1960).

In Baron v. O'Sullivan, supra, as in this case, the action was brought under the Civil Rights Act, 42 U.S.C.A. § 1983, with jurisdiction being invoked under 28 U.S.C.A. § 1343. The plaintiff filed a complaint against the members of the Board of Examiners of Jersey City, alleging a conspiracy under color of state law to deprive her of the privilege of receiving a certificate as a permanent teacher. It appeared plaintiff had availed herself of two administrative reviews, both before the Jersey City Board, but had not exhausted the state administrative remedies provided by N.J.S.A.

18:3–14 and 15. The Court of Appeals for the Third Circuit, referring to these provisions as "two steps in the statutory scheme of administrative review", held that they afforded plaintiff an administrative rather than a judicial remedy, and that since plaintiff did not exhaust the remedy thus provided, her action was premature.

The Court's attention has been called to the case of Boult v. Board of Education, 136 N.J.L. 521, 57 A.2d 12 (E. & A. 1948), which is said to stand for the proposition that the remedy provided by N.J.S.A. 18:3–14 and 15 is judicial rather than administrative in nature. The Court disagrees with this contention. That case involved nothing more than a review by the Commissioner and the State Board, under the cited statutes, of certain discretionary action taken by the local board of education. The action of the local board was affirmed by the Commissioner and the State Board. In upholding this affirmance, the court observed that the Commissioner had properly applied the principles governing the scope of *judicial review* in reviewing the action of the local board. This language, in the context of the case, does not mean that an appeal to the Commissioner and the State Board is a *judicial remedy* which need not be exhausted before resort is had to a federal court. It refers only to the judicial nature of the review which the administrative officer or board must afford. Proceedings before the Commissioner and State Board have always been considered to be administrative in nature. Boult v. Board of Education, 135 N.J.L. 329, 51 A.2d 537 (Sup.Ct.1947); Laba v. Newark Board of Education, 23 N.J. 364, 129 A.2d 273 (1957); In re Masiello, 25 N.J. 590, 138 A.2d 393 (1958); Durgin v. Brown, 37 N.J. 189, 180 A.2d 136 (1962).

 Thus it would seem clear that the remedy provided by N.J.S.A. 18:3–14 and 15 is administrative in nature and not judicial.

Plaintiffs also argue that the Commissioner has no power or authority to give them the relief they seek, and that the administrative remedy provided by New Jersey law is inadequate. They say, in effect, that they have made no effort to exhaust state administrative remedies because to do so would be futile.

A number of cases have been cited by plaintiffs in support of this argument. A few examples will suffice to show what the courts were confronted with in those cases.

In Orleans Parish School Board v. Bush, 242 F.2d 156 (5 Cir. 1957), resort to the administrative remedies provided by the State of Louisiana was held to be a "vain and useless gesture" because school assignments could be made under the Louisiana constitution and statutes only on the basis of separate schools for white and colored children.

In School Board of City of Newport News, Va. v. Atkins, 246 F.2d 325 (4 Cir. 1957) it was held plaintiffs were not required to exhaust the administrative remedies provided by the Pupil Placement Act of Virginia because of the fixed and definite policy of the school authorities with respect to segregation. For other cases involving the same Act, see Beckett v. School Board, 185 F.Supp. 459 (E.D.Va.1959) and Farley v. Turner, 281 F.2d 131 (4 Cir. 1960).

The case of Borders v. Rippy, 247 F.2d 268 (5 Cir. 1957), involved administrative remedies under Texas law. The law of that state gave to the Board of Education and the Superintendent of Schools the power to act concerning integration. In the exercise of that power, the Board and Superintendent denied to plaintiffs the right to attend public schools of their choice solely on account of their race or color. The court held such action deprived plaintiffs of their constitutional rights, and it was not necessary to first exhaust state administrative remedies.

In Kelly v. Board of Education, 159 F.Supp. 272 (M.D.Tenn.1958), it was argued on behalf of the defendant that the Pupil Placement Act of Tennessee provided plaintiffs with an adequate admin-

istrative remedy to obtain admission or transfer to particular schools and that they should have been required to exhaust such remedy before resorting to a court for relief. Defendant's motion to dismiss the complaint for this reason was denied, the court stating, at page 276:

"Clearly the principal reason why the administrative remedy under the Act is inadequate is that the administrative agency would be in the instant case, the Board of Education of the City of Nashville. That agency, according to the record in this case, has never abandoned a policy of compulsory segregation in the public schools, other than in the first grade as provided for by its plan which was heretofore approved in part by the Court. To require plaintiffs to go before a board committed in advance to a continuance of compulsory segregation would be to require them to perform a futile act or to pursue a remedy which would have no reasonable prospect of success."

An examination of these cases, as well as others cited by plaintiffs, disclose that resort to administrative remedies was not required because of a number of factors, such as, the existence of a fixed policy of racial segregation; the refusal to enroll children in schools nearest their homes solely on account of their race or color; the inadequacy of the administrative remedies afforded; and the futility of resorting thereto. Compare, Flax v. Potts, 204 F.Supp. 458 (N.D.Texas 1962). It will become apparent from the following discussion that none of the factors which justified the refusal of the federal courts to apply the exhaustion doctrine in the cited cases are present in the case at bar.

Plaintiffs have not satisfied this Court that the Commissioner lacks authority to grant the specific relief requested herein. There is ample power in the Commissioner to hear all disputes and controversies arising under the school laws and to make binding decisions with respect thereto. See for example, Laba v. Newark Board of Education, 23 N.J. 364, 129 A.2d 273 (1957); In re Masiello, 25 N.J. 590, 138 A.2d 393 (1958); Durgin v. Brown, 37 N.J. 189, 180 A.2d 136 (1962). Moreover, such decisions may be enforced, where necessary, in the state courts. Thompson v. Board of Education, 57 N.J.L. 628, 31 A. 168 (Sup. Ct.1894); Schwarzrock v. Board of Education, 90 N.J.L. 370, 101 A.2d 394 (Sup.Ct.1917).

In addition, plaintiffs have admittedly made no effort whatsoever to test the adequacy of the administrative remedies provided by N.J.S.A. 18:3–14 and 15. The bare allegations in the complaint that the Commissioner consented to, condoned, or directed, some of the acts complained of, do not impress the Court, especially since the matters in question appear to relate to those normally handled by local boards of education, such as, the fixing of school boundary lines, the assignment and transfer of children to the various schools in a particular school district, and so forth. Since plaintiffs have not only failed to show wherein the Commissioner lacks power to grant the relief requested, but have not even attempted to utilize the available state administrative remedies, this Court is unable to conclude, at this time, that such remedies are inadequate or that resort thereto would be futile.

In McNeese v. Board of Education, 199 F.Supp. 403 (E.D.Ill.1961), the complaint attacked the "neighborhood school policy" as such policy was being applied by defendants. Plaintiffs also alleged they had not exhausted any of the administrative remedies provided by the laws of the State of Illinois because those laws were inadequate to give the relief sought. The court was asked to declare the "neighborhood school policy", as employed by defendants, to be illegal and unconstitutional and in violation of plaintiffs' rights. Defendants moved to dismiss the action because of plaintiffs' failure to exhaust available administrative remedies under Illinois law. The

motions to dismiss were granted, in the following language:

" * * * the Court is of the opinion that until the plaintiffs have attempted to avail themselves of the provisions that the administrative review provides, they have failed to comply in the remotest manner with the administrative remedy provisions, and until at least an honest attempt is made to pursue that remedy, this Court should not interfere with the state authorities and deprive them of the opportunity to put their own house in order. Since the plaintiffs have failed to pursue or even attempt to pursue the administrative remedy provided, this Court should not entertain this cause of action.

"The mere assertion by plaintiffs that the administrative review provided for under the laws of the State of Illinois is inadequate, without first having attempted to utilize that remedy, does not show this Court that the administrative review is in fact ineffective to produce the result attempted by the statute and desired herein by these plaintiffs."

The concern shown by the State of New Jersey in matters concerning racial discrimination would also appear to negate any apprehension that resort to available state administrative remedies would be futile. For many years, and prior to the decision in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the courts of New Jersey declared it to be unlawful for boards of education, solely on the basis of race, either to exclude children from any public school, or to refuse them admission to the school nearest their residence, or to require them to attend segregated schools. Pierce v. Union District, 46 N.J.L. 76 (Sup.Ct.1884), aff'd 47 N.J.L. 348 (E. & A. 1885); Raison v. Board of Education, 103 N.J.L. 547, 137 A. 847 (Sup.Ct.1927); Patterson v. Board of Education, 11 N.J.Misc. 179, 164 A. 892, aff'd. 112 N.J.L. 99, 169 A. 690 (E. & A. 1934); Hedgepeth v. Board of Education, 131 N.J.L. 153, 35 A.2d 622 (Sup.Ct.1944).

This policy against discrimination is reflected in Article 1, paragraph 5, of the 1947 New Jersey Constitution, which provides:

"No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin."

Implementing this constitutional provision is the anti-discrimination law, N.J.S.A. 18:25-1 et seq. Section 18:25-4 of this statute provides:

"All persons shall have the opportunity * * * to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, * * * without discrimination because of race, creed, color, national origin or ancestry, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right."

In Section 18:25-5(j) of the same statute a "place of public accommodation" is defined to include:

" * * * any kindergartern, primary and secondary school, trade or business school, high school, academy, college and university, or any educational institution under the supervision of the State Board of Education, or the Commissioner of Education of the State of New Jersey."

Walker v. The Board of Education of the City of Englewood, (M-1268, May 19, 1955) is a case decided by the Commissioner of Education pursuant to his authority under this Act. In that case the complaint charged the Englewood Board of Education with discrimination resulting from a change in school boundary lines. The Commissioner not only ordered the Board to redraw the lines so as to eliminate the discrimination then complained of, but also ordered the closing of a school which had been used almost exclusively for Negro children.

Another case decided under the anti-discrimination law is Jones v. Haridor

Realty Corp., 37 N.J. 384, 181 A.2d 481, (1962). There the Commissioner ordered a real estate developer to sell a home and building lot to a Negro upon the same terms available to all other purchasers. The Supreme Court of New Jersey, in affirming the Commissioner, reiterated the State's strong policy against racial discrimination, and stated that:

"No device, whether innocent or subtly purposeful, can be permitted to frustrate the legislative determination to prevent discrimination."

The plaintiffs have not satisfied this Court that the Commissioner of Education of the State of New Jersey would not follow this clearly expressed state policy against racial discrimination in dealing with the matters alleged in the complaint. Under these circumstances, there has been no showing that a resort to the Commissioner in the first instance would be futile.

The plaintiffs in this case attack the practice followed in Englewood of assigning children to the public schools of that City pursuant to a "neighborhood school policy", which practice, they say, because of the existence of racially segregated neighborhoods, results in racially segregated schools. In Taylor v. Board of Education, 191 F. Supp. 181 (S.D.N.Y.1961), aff'd. 2 Cir., 294 F.2d 36, cert. den. 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339, a federal court struck down the application of a "neighborhood school policy" which was purposefully utilized by the local school board to maintain a racially segregated school. In commenting on the "neighborhood school policy" the court said, 191 F.Supp. at p. 195:

"The neighborhood school policy certainly is not sacrosanct. It is valid only insofar as it is operated within the confines established by the Constitution. It cannot be used as an instrument to confine Negroes within an area artificially delineated in the first instance by official acts. If it is so used, the Constitu-

tion has been violated and the courts must intervene."

In another case involving the "neighborhood school policy", Branche v. Board of Education, 204 F.Supp. 150 (E.D.N.Y. 1962), the defendants moved for a summary judgment on the ground that segregation, if it did exist in the public schools, was not the result of any deliberate action on the part of the local school board, but rather resulted from the segregated pattern of the neighborhoods. In denying the motion, the court observed that:

"The educational system that is thus compulsory and publicly afforded must deal with the inadequacy arising from adventitious segregation; it cannot accept indurate segregation on the ground that it is not coerced or planned but accepted."

█ Of course, a determination of the manner in which the "neighborhood school policy" operates in any particular community requires a consideration and evaluation of a multitude of factors. This Court feels that the Commissioner is especially well qualified, by reason of his knowledge and experience in the specialized field of education, to make these factual determinations. There is no reason to assume that the Commissioner, in the performance of his duty, will not be guided by the applicable legal principles. Under all of the circumstances, the Commissioner should be given the opportunity, at least in the first instance, to pass upon the matters set forth in plaintiffs' complaint. Until such time as plaintiffs have exhausted the state administrative remedies provided by N.J. S.A. 18:3–14 and 15, this Court should not entertain the action.

The motions to dismiss the complaint will be granted, but without prejudice to the filing of another complaint in this Court after the matter has been heard and determined by the Commissioner and the State Board of Education.

Submit order.